# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8487 | **DATE** | 7/26/2004 |
| **CASE TITLE** | KAREN B. SULLIVAN vs. PROGRESSIVE CASUALTY INSURANCE CO | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: This Court grants Defendant's motion to dismiss Count IV [doc. no. 9-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 27 2004 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | r bf | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| CG | courtroom deputy's initials | 2004 JUL 26 PM 2: 04 U.S. DISTRICT COURT | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED

JUL 2 7 2004

KAREN B. SULLIVAN,          )
                            )
    Plaintiff,          )
                            )      Judge Ronald A. Guzmán
    v.                  )
                            )
PROGRESSIVE CASUALTY        )      03 C 8487
INSURANCE COMPANY,          )
                            )
    Defendant.          )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Karen B. Sullivan has sued defendant Progressive Casualty Insurance Co. for discriminating against her on the basis of sex pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, for retaliatory discharge pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and breach of contract for Defendant's failure to pay Plaintiff her year-end bonus and reimburse her for her mileage. Defendant filed an answer to Counts I-III, and before the Court is Defendant's motion to dismiss Count IV of the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons provided in this Memorandum Opinion and Order, the motion is granted.

## FACTS

On July 7, 1991, Plaintiff was hired by Defendant as a Territory Sales Manager Trainee. (Compl. ¶ 4.) On January 5, 1992, Plaintiff was promoted to Territory Sales Manager, and in January 1994, she was thereafter promoted to Senior Territory Sales Manager. (*Id.* ¶¶ 5-6.) Defendant alleges Plaintiff's promotion to Senior Territory Sales Manager occurred in January



1995. (*Id.* ¶ 6.)  In June 2000, Plaintiff was ultimately promoted to District Sales Manager, and remained in that position until December 2001. (*Id.* ¶ 7.)  Plaintiff alleges she received compliments from her supervisors, fellow employees, and customers on her work performance and was always among the best employees in her position. (*Id.* ¶ 8.)

In late spring of 2000, Plaintiff discovered she was pregnant with a baby due in late January 2001. (*Id.* ¶ 9.)  On December 8, 2000, Plaintiff went on maternity leave, which was covered by the FMLA, and on January 16, 2001, Plaintiff gave birth to a baby girl. (*Id.* ¶ 10.)  Plaintiff alleges that her maternity leave was extended by use of her sick time and vacation time, and that she returned to work upon the expiration of her Family and Medical Leave on April 13, 2001. (*Id.* ¶¶ 12-13.)

As a District Sales Manager, Plaintiff received a company car, which Defendant permitted her to retain while on maternity leave. (*Id.* ¶ 14.)  Defendant's policy on company cars entitled managers in Plaintiff's position to a mileage reimbursement for business use of the car, including driving to auto mechanics for normal maintenance, car washes for normal cleaning, and gas stations for fueling. (*Id.* ¶¶ 15-16.)

Defendant's policy on company cars also provides that managers in Plaintiff's position were entitled to five-hundred personal miles per month, that any personal miles not used in a month rolled over for use in subsequent months, and that any personal miles not used by the year's end could be redeemed by the employee for a mileage reimbursement as long as, Defendant argues, employees did not claim such mileage fraudulently. (*Id.* ¶ 15; Def.'s Answer Counts I-III Compl. ("Def.'s Answer") ¶ 16.)  Defendant also argues that its policy did not prohibit employees on Family and Medical Leave from claiming business and/or personal mileage so long as such mileage was not claimed fraudulently. (Def.'s Answer ¶ 16.)

2

While on leave, Plaintiff alleges she occasionally used the company car for business purposes falling within Defendant's policy, and accrued a total of 1,345 business miles during the months of January, February, and March 2001, at Defendant's then-applicable rate of 32.5 cents per mile, equaling $437.12. (Compl. ¶ 17.) Plaintiff further claimed 1,200 miles of personal mileage. (*Id.* at 18.) On June 1, 2001, Plaintiff gave Defendant a written account of her business and personal mileage while on Family and Medical Leave for the months of January and February 2001, and on or about June 15, 2001, Plaintiff gave Defendant a written account of such mileage for March 2001. (*Id.* ¶ 19.)

Plaintiff alleges that Defendant terminated her on December 7, 2001 for having claimed mileage while on Family and Medical Leave. (*Id.* ¶ 20.) Defendant then gave Plaintiff's duties to the Regional Sales Manager, who was male, and did not replace her with a new District Sales Manager. (*Id.* ¶ 21.) Plaintiff alleges that, contrary to its policies, Defendant refused to allow her to appeal her termination to a neutral third party and failed or refused to pay Plaintiff $738.90 for the 2,412 miles she had accrued. (*Id.* ¶ 23.) Plaintiff also alleges that Defendant failed to pay her any or all of her bonus for 2001 because she was not employed on December 17, 2001. (*Id.* ¶ 24.) Defendant argues she was ineligible for such a bonus. (Def.'s Answer ¶ 24.)

## DISCUSSION

The purpose of a motion to dismiss, pursuant to Rule 12(b)(6) is to examine the adequacy of the complaint, not to decide the merits of the case. Fed. R. Civ. P. 12(b)(6); *see Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, the court must construe all reasonable inferences drawn from the facts of the complaint in the light most

favorable to the plaintiff, and all well-pleaded facts and allegations in the complaint must be taken as true. *See Roots P'ship v. Lands' End, Inc.*, 965 F.2d 1411, 1416 (7th Cir. 1992); *Branch v. Costa*, No. 00 C 4765, 2000 WL 1671495, at *1 (N.D. Ill. Nov. 3, 2000). Defendants must meet a high standard in order to have a complaint dismissed for failure to state a claim, and the allegations of a complaint should not be dismissed unless it appears beyond a doubt that the plaintiff cannot prove any set of facts in support of her claim entitling her to relief. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997); *Hamros v. Bethany Homes & Methodist Hosp. of Chicago*, 894 F. Supp. 1176, 1178 (N.D. Ill. 1995).

With regard to Defendant's motion to dismiss, Defendant argues that Plaintiff's Illinois common law claim for retaliatory discharge under the FMLA (Count IV) should be dismissed due to a failure to state a claim. Defendant argues that every federal district court in Illinois to address the same issue has uniformly rejected the creation of this new public policy tort by holding that the Illinois Supreme Court would refuse to extend the tort of retaliatory discharge to include claims based on the FMLA. Moreover, Defendant argues that because Plaintiff has not relied upon a statute in support of her retaliatory discharge claim that embodies a public policy, the claim cannot survive a motion to dismiss.

Plaintiff alleges that she was discharged by Defendant, her employer, for exercising her rights under the Family and Medical Leave Act of 1993, and that such dismissal gives rise to claims under both the FMLA and the Illinois state law tort of retaliatory discharge. (Compl. ¶¶ 45-47.) The purpose of the FMLA is to promote equal employment opportunities for men and women and to prevent gender-based discrimination in the workplace. *Nevada Dep't. of Human Res. v. Hibbs*, 538 U.S. 721, 727-28 (2003). This Act entitles eligible employees to take up to twelve work weeks of unpaid leave annually for several reasons, including serious health

conditions, and allows the plaintiff to seek both equitable relief and money damages against any employer, if the employer interferes with the plaintiff's right to exercise rights under the FMLA. *Id.* at 724-25.

In the present matter, Plaintiff argues that the FMLA embodies important federally mandated public policies which must be protected from retaliation by Illinois law, just as state policies are protected by Illinois law. (Pl.'s Resp. Def.'s Mot. Dismiss ("Pl.'s Resp.") ¶ 3.) She alleges that she has established a cause of action because Defendant discharged her for claiming mileage for her company car while on maternity leave while male and non-pregnant employees were not terminated for claiming mileage after taking leave, and Defendant then replaced her with a male employee. (Compl. ¶¶ 20-21, 32-33.) Plaintiff further alleges that Defendant never reimbursed her for that mileage in retaliation for her having taken maternity leave. (*Id.* ¶ 23.) Defendant argues that Plaintiff was terminated for claiming her mileage fraudulently, in violation of company policy and that fraudulently claimed mileage is not reimbursed. (Def.'s Mot. ¶ 2.)

Illinois has recognized the limited and narrow tort of retaliatory discharge as an exception to the general rule of at-will employment. *Balla v. Gambro, Inc.*, 584 N.E.2d 104, 107 (Ill. 1991); *see Alexander v. Somer*, No. 01 C 1908, 2002 WL 31557607, at *9 (N.D. Ill. Nov. 18, 2002); *Callozzo v. Office Depot, Inc.*, No. 97 C 5308, 1998 WL 111628, at *2 (N.D. Ill. Mar. 6, 1998). In order to establish a cause of action for retaliatory discharge, the plaintiff must show that: (1) she was discharged in retaliation for her activities; and (2) the discharge is a violation of a clearly mandated public policy. *Jacobson v. Knepper & Moga, P.C.*, 706 N.E.2d 491, 493 (Ill. 1998); *see Alexander*, 2002 WL 31557607, at *9.

A claim for retaliatory discharge should be recognized when it is necessary to prevent

employers from using their power of termination in a manner that frustrates the public policy behind other Acts, such as the Workmen's Compensation Act. *See Barr v. Kelso-Burnett Co.*, 478 N.E.2d 1354, 1356 (Ill. 1985); *Handel v. Belvedere USA Corp.*, No. 00 C 5042, 2001 WL 1286842, at *3-4 (N.D. Ill. Oct. 22, 2001). However, the Illinois Supreme Court does not "strongly support" an expansion of this tort, and will only provide one when there is a clear violation of mandated public policy. *Barr*, 478 N.E.2d at 1356. Public policies based on social or economic regulation are not as likely to be considered sufficient to support claims of retaliatory discharge. *McGrath v. CCC Info. Servs.*, 731 N.E.2d 384, 391 (Ill. App. Ct. 2000).

Instances in which the Illinois Supreme Court has expanded protection for retaliatory discharge include situations in which employees were terminated for supplying information to law-enforcement agencies against other employees or their employers (referred to as whistle-blowing), and employees who filed worker's compensation claims. *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 877-79 (Ill. 1981) (whistle-blowing); *McGrath*, 731 N.E.2d at 389 (worker's compensation).

One of the difficulties in deciding whether to expand the tort of retaliatory discharge is determining what constitutes a clearly mandated public policy. *Callozzo*, 1998 WL 111628, at *2. In the past, the Illinois Supreme Court has held that public policy "concerns what is right and just and what affects the citizens of the State collectively." *Palmateer*, 421 N.E.2d at 878. Such policy must "strike at the heart of a citizen's social rights, duties, and responsibilities." *Id* at 878-79. A claim for retaliatory discharge will be denied if only private interests are affected. *Callozzo*, 1998 WL 111628, at *2-3. Moreover, the Illinois Supreme Court has not expanded the tort of retaliatory discharge if other, adequate safeguards to the public policy implicated in the case are available. *Jacobson*, 706 N.E.2d at 494.

6

Defendant argues that the FMLA does not involve matters that strike at the heart of a citizen's social rights, duties, and responsibilities, and therefore Plaintiff cannot base her retaliation claim upon it. *Handel*, 2001 WL 1286842, at *4. In the past, courts in this district have held that the FMLA was designed to balance the employer's legitimate interests with the needs of employees in obtaining leave for certain medical or family reasons, and thus affected only the private relationship between the employer and employee. *Id.*; *see Hamros*, 894 F. Supp. at 1179; *Dormeyer v. Comerica Bank–Ill.*, No. 96 C 4805, 1998 WL 729591, at *6 (N.D. Ill. Oct. 14, 1998); *Callozzo*, 1998 WL 111628, at *4.

Plaintiff argues that the United States Supreme Court stated in at least one case that the FMLA embodies significant federal policy to curtail certain types of discrimination. *Nevada*, 538 U.S. at 732-33 (plaintiff sought and was granted leave under FMLA to care for ailing wife, but defendants terminated him when he failed to return to work). Nevertheless, Plaintiff's case may be distinguished for several reasons. *See id.* at 735-36; *Barr*, 478 N.E.2d at 1357.

First, the issue before *Nevada v. Hibbs* was not whether the Illinois Supreme Court would recognize a common law action for retaliatory discharge for exercising rights under the FMLA, but whether a state employee may recover damages under the FMLA if a state fails to comply with the federal statute. 538 U.S. at 726. Second, in reaching the decision that state employees may recover for retaliatory discharge under the FMLA, the Court discussed congressional findings leading to the enactment of the FMLA for the sole purpose of determining whether congress abrogated the state's Eleventh Amendment immunity when enacting the FMLA. *Id.* at 732, 735-36.

Defendant also argues that the FMLA already provides strong deterrents to violations of federal policy, and thus Plaintiff need not file a state law claim for retaliatory discharge. (Def.'s

Mot. ¶ 1.) Plaintiff counters that it is irrelevant that the FMLA carries its own anti-retaliation penalties because the Seventh Circuit and Illinois Appellate Court have held in at least one case each that a federal law having its own anti-retaliation remedies does not preclude protection under common-law retaliatory discharge torts. (Pl.'s Resp. ¶ 4.); *see, e.g., Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 943-46 (7th Cir. 2002) (stating Illinois common law retaliatory discharge claim may be brought where whistle-blowing plaintiff was terminated although he may have been able to recover under False Claims Act); *Johnson v. World Color Press, Inc.*, 498 N.E.2d 575, 579-80 (Ill. App. Ct. 1986) (stating whistle-blowing plaintiff may sue for common law retaliatory discharge although he could recover under federal securities laws).

Although Plaintiff cites *Brandon v. Anesthesia & Pain Management Associates* in support of this argument, the present matter may be distinguished from *Brandon* for several reasons. *See* 277 F.3d at 943-46. First, in *Brandon*, the Seventh Circuit held that it was unclear whether the conduct of plaintiff and his employer would allow plaintiff to bring a suit under the federally mandated False Claims Act ("FCA"), and thus allowed him to pursue a claim under the Illinois common law in order to provide him with a remedy for his retaliatory discharge. *Id.* at 945. Second, the plaintiff in *Brandon* was a whistle-blower, putting him in one of the two categories of retaliatory discharge that the Illinois Supreme Court has expanded its protection to recognize. *Id.* at 940; *see, e.g., Palmateer*, 421 N.E.2d at 879. Finally, the Illinois legislature has specifically articulated that reporting fraud under the FCA serves an important public purpose, making it a good public policy affecting the health and safety of citizens in Illinois. *Brandon*, 277 F.3d at 942.

In the instant case, Plaintiff's retaliatory discharge claim focuses on Defendant's refusal

8

to reimburse her for mileage and provide her with a year-end bonus. The Illinois Appellate Court has recognized that underlying disputes involving wages or payments go toward private economic rights and not public policy. *Chicago Commons Ass'n v. Hancock*, 804 N.E.2d 703, 706 (Ill. App. Ct. 2004) (declining to recognize common law retaliatory discharge claim where employee alleged he was fired for defending against employer's lawsuit for reimbursement of wages); *McGrath*, 731 N.E.2d at 391 (declining to recognize common law retaliatory discharge claim where employee claimed he was fired and not paid bonus or stock options due to his lawsuit under Illinois Wage Payment and Collections Act.)

Thus, because Plaintiff's claim is not based on a public policy which the Illinois legislature or courts have specifically expressed to be of great importance to the citizens of Illinois, her claim is not likely to be recognized by the Illinois Supreme Court as an appropriate Illinois common law retaliatory discharge tort. In fact, had Plaintiff brought this claim in state court, there is little doubt that the trial or appellate court would follow *Chicago Commons Association v. Hancock*, 804 N.E.2d at 706, or *McGrath v. CCC Information Services*, 731 N.E.2d at 391, in determining that Plaintiff's claim is not a sufficiently significant violation of a clearly mandated public policy.

The purpose of this Court is to determine how the Illinois Supreme Court would rule if this case were before it. As a result, this Court joins the majority of Illinois courts in holding that, where the underlying disputes are primarily economic in nature, a claim for common law retaliatory discharge is not recognized. It is improbable that the Illinois Supreme Court would permit a claim for retaliatory discharge based on rights set forth through the FMLA under the circumstances of this case. While the Illinois Supreme Court has already expanded the retaliatory discharge tort to two categories, whistle-blowing and worker's compensation claims,

9

those torts protect citizens from criminal activity or serious hazards. The FMLA, on the other hand, protects private interests by balancing the needs of employers and employees. Accordingly, Defendant's motion to dismiss Count IV is granted.

## CONCLUSION

For the foregoing reasons, this Court grants Defendant's motion to dismiss Count IV [doc. no. 9-1].

**SO ORDERED**

ENTERED: 7/26/04

**HON. RONALD A. GUZMAN**
**United States Judge**